UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUSAN MYRA COOK,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

Case No. 3:10-cv-05110-BHS-KLS

REPORT AND RECOMMENDATION

Noted for February 11, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 21, 2005, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 1990, due to degenerative disc disease, arthritis, panic attacks, hypertension, severe depression, sleep apnea, and memory loss. See Tr. 21, 94, 117. Her application was denied upon

initial review and on reconsideration. See Tr. 21, 62, 67. A hearing was held before an administrative law judge ("ALJ") on March 12, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 31-59.

On May 23, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 21-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 14, 2009, making the ALJ's decision defendant's final decision. See Tr. 6; see also 20 C.F.R. § 416.1481. On February 16, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See (ECF #1-#3). The administrative record was filed with the Court on April 27, 2010. See (ECF #12). The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical and lay witness evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (3) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Crabbe

In his decision, the ALJ stated that plaintiff "sat through the hearing crying and rocking and no one has ever commented on this level of distress in [her] other than Dr. [Carla] van Dam[,

Ph.D.,] who felt she was exaggerating." Tr. 28. The ALJ relied on this description of the record in part to find that plaintiff tended "to overstate her problems." Id. In so doing, plaintiff argues the ALJ failed to fully discuss and explain what weight he was giving to the findings of Richard A. Crabbe, M.D., her treating psychiatrist. The undersigned agrees.

Specifically, plaintiff points out that contrary to the ALJ's above statement, Dr. Crabbe also described her during an evaluation of her in late June 2005, as spending "virtually all of the one hour of the interview rocking back and forth," as well as becoming "weepy at some points." Tr. 181. Nor, also as pointed out by plaintiff, did Dr. Crabbe give any indication that he felt she was malingering or otherwise exaggerating her symptoms. See Tr. 179-82. Since this evaluation report constitutes significant probative evidence, and since Dr. Crabbe's observation of plaintiff contrasts with that of both Dr. van Dam and the ALJ at the hearing, the ALJ committed error by not specifically discussing this discrepancy or how he resolved it.

Plaintiff further argues, and the undersigned once more agrees, the ALJ erred in failing to discuss or state what weight he gave to the global assessment of functioning ("GAF") score of 50 with which Dr. Crabbe assessed her. See Tr. 182. A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning,'" and is "relevant evidence" of the claimant's ability to function mentally. Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007); England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV") at 34); see also England v. Astrue, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's

general ability to perform basic tasks of daily life).

While it is true that even though a GAF score may be "of considerable help" to the ALJ in, for example, assessing a claimant's residual functional capacity, "it is not essential" to the accuracy of that assessment. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). As such, an ALJ's "failure to reference the GAF score" in assessing a claimant's residual functional capacity "standing alone" does not make the RFC assessment inaccurate. Id. Here, however, with the exception of Dr. van Dam (see Tr. 240 (stating that plaintiff's GAF score "[c]ould not be ascertained due to credibility concerns")), the GAF score assessed by Dr. Crabbe is fairly consistent with the other GAF scores contained in the record. See Tr. 177 (GAF score of 55[1]); 196 (same); 346 (GAF score of 45[2]); 357 (current GAF score of 51, with 50 being highest GAF score in past year); 358 (GAF score of 51). Once more, the ALJ's failure here to consider such significant probative evidence was error.

Defendant argues plaintiff has not shown Dr. Crabbe's comment that she spent almost the entire interview crying and rocking back and forth constitutes medical opinion evidence. But Dr. Crabbe's comments resulted from the mental status examination he performed, which alone has been found to be a proper basis for a medical diagnosis. See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination results provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury."). Defendant's argument with respect to the GAF issue also is without merit, since, as pointed out by plaintiff, Dr. Crabbe is a

[1] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV at 34).

[2] Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

medical doctor, not a mental health counselor.

While the mere failure to mention the fact that a medical source is a treating physician is not alone a sufficient basis to assert error – because Dr. Crabbe was plaintiff's treating physician and because, for the reasons discussed above, the ALJ erred in evaluating Dr. Crabbe's late June 2005 evaluation report – it is not at all clear that the ALJ took Dr. Crabbe's status into account in giving primary weight to the evaluation report of Dr. van Dam. On the other hand, because "[h]e mere existence of an impairment" alone "is insufficient proof of a disability," there was no error on the ALJ's part in failing to expressly mention in his decision that Dr. Crabbe had diagnosed her with an anxiety disorder and depression or any related symptoms, given that, other than the GAF score, there was no mention by Dr. Crabbe of specific work-related limitations stemming therefrom. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

The same is true in regard to the ALJ's failure to mention that Dr. Crabbe noted plaintiff had a family history of mental illness implying a genetic predisposition, or that Dr. Crabbe had prescribed psychotropic medications for her. The ALJ further did not err in failing to expressly mention Dr. Crabbe saw her on several other occasions, except to the extent, as noted above, that it is unclear whether he had properly considered his status as a treating physician. With regard to the comments in Dr. Crabbe's treatment notes that plaintiff's medications were not effective, it is clear Dr. Crabbe merely was reflecting what plaintiff herself had reported in regard thereto. See Tr. 179, 296-97. 334-35. But since plaintiff has not challenged the ALJ's adverse credibility determination, the ALJ did not err in not mentioning those comments. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (same).

B. Dr. Sarner

Plaintiff also challenges the ALJ's findings regarding another of her treating physicians, Robert Sarner, M.D., which read as follows:

> On March 28, 2008, Dr. Sarner, the claimant's treating physician, completed a questionnaire at the request of the claimant's attorney. He indicated that, since July 21, 2005, the claimant has occasionally been able to sustain a regular eight hour workday, five days a week. He said that the claimant had impairments that could cause her symptoms, but referred to progress notes for documentation of reported hip pain, irregular sleep, arm pain, hand pain and depression. He indicated that in the past year the claimant would probably have had to miss three or more days of work a month (Exhibit 23F).
>
> . . .
>
> . . . While her doctor completed a questionnaire, it was not very strong in the conclusion that the claimant could not work. It stated that the claimant probably would have missed work and to see notes about how her impairments impacted her, when the notes show that she occasionally complains of problems but they are not persistent complaints every time she sees the doctor. Additionally, her doctor has suggested that there have been occasions during the time that the claimant has alleged disability where she has been able to work and sustain an eight hour work day at a sedentary, light or medium level work. He has not clarified when those periods were or what he meant by occasionally. While he said that in the last year she probably would have missed three days or more a month, he has not indicated why he reached this conclusion. The questionnaire was promulgated by the claimant's attorney and the doctor said that it was supported by progress notes (exhibit 23F). In my review of the progress notes, I did not see anything that would suggest that the claimant was unable to perform the work I have indentified . . .

Tr. 25, 28.

Although the undersigned agrees with plaintiff that not all the reasons the ALJ gave for rejecting Dr. Sarner's opinion were proper, overall the ALJ did not err in doing so. First, an ALJ does have a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). It also is true that it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the

record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The undersigned finds that while ALJ's own language indicates it was not clear to him why Dr. Sarner came to certain conclusions – and, thus, had he relied on those reasons alone here with seeking further clarification, he would have erred – overall the ALJ gave legitimate and specific reasons for discounting Dr. Sarner's opinion.

As pointed out by the ALJ, Dr. Sarner's treatment notes fail to fully support the work-related limitations Dr. Sarner set forth in the questionaire, at least to the extent those limitations were inconsistent with the type of work the ALJ himself found plaintiff could perform. This was a valid basis upon which to discount Dr. Sarner's opinion, even if some of the specific comments in the questionaire were ambiguous. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is brief, conclusory or inadequately supported by clinical findings); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Accordingly, the ALJ's treatment of Dr. Sarner's opinion does not warrant reversal of the ALJ's decision. As such, although it was also not proper for the ALJ to reject that opinion on the basis that it was procured by plaintiff, the rejection thereof itself still must be upheld. See Lester, 81 F.3d 821, 832 (9th Cir. 1996) ("A . . . doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by [defendant].").

II. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's daughter in which she sets forth her observations of plaintiff's symptoms and limitations. See Tr. 129-35. As noted by plaintiff, although the ALJ summarized those observations (see Tr. 24), he failed to state what weight was being accorded to them. The undersigned agrees the ALJ erred in failing to do so. Defendant argues the ALJ was not required to address plaintiff's daughter's statement, because when seen in the context of the record as a whole, that statement showed plaintiff to be more active than she is claiming, and because plaintiff has not argued that the statement supports a greater assessment of functional limitations than the ALJ found. But it is clear from that statement that plaintiff's daughter reported more significant limitations than found by the ALJ.

As the ALJ himself noted, for example, plaintiff's daughter reported that chores took a long time for plaintiff, plaintiff's hands often swelled up, she often forgot things, she left tasks unfinished, and she was afraid to go outside. Given that the ALJ's assessment of plaintiff's residual functional capacity ("RFC") – as discussed in greater detail below – appears not to fully encompass these reported problems, it cannot be said that the ALJ's failure to explain the weight he was giving plaintiff's daughter's statement was harmless, even though it may indicate greater functioning on plaintiff's part in some other functional areas. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with a residual functional capacity to perform light work, except that she would be able to climb ladders, ropes or scaffolds only occasionally. See Tr. 27. In addition, the ALJ found plaintiff could perform simple and repetitive tasks, as well as relate appropriately to a supervisor and a few co-workers in a clean and sober non-public setting. See id. Plaintiff argues the ALJ erred by failing to include in his RFC assessment all the mental functional limitations described by Dr. Crabbe. As discussed above, the only limitations that Dr. Crabbe placed on plaintiff in this regard are those represented by the GAF score he assessed. On the other hand, given that the ALJ erred in assessing that GAF score and in the observation made

by Dr. Crabbe regarding plaintiff's behavior during his evaluation of her, it is unclear whether the ALJ's RFC assessment is completely accurate.

Plaintiff further argues the ALJ erred in not fully exploring how her obesity would affect her ability to work, and thus in not including specific limitations stemming from that condition in his assessment of her residual functional capacity. But plaintiff points to no actual functional limitations that have been attributed to her obesity by the medical sources in the record. That is, even though plaintiff's obesity condition may be serious or even "extreme" as plaintiff describes (see (ECF #17, p. 17 and n. 26)), there is nothing in the record, as noted by the ALJ (see Tr. 26), to demonstrate that it in fact affected her ability to work. On this issue then, the ALJ did not err in excluding any obesity-related limitations from his RFC assessment.

IV. The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See Tr. 55-56. In response to that question, the vocational expert testified that an individual with those limitations – and the same age, education, and work background as plaintiff – would be able to perform other jobs. See Tr. 56-58. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and thus not disabled. See Tr. 29-30.

Plaintiff argues the ALJ erred in failing to include in the hypothetical question he posed to the vocational expert, the limitations described by Dr. Crabbe. For the same reasons discussed above in regard to the ALJ's assessment of plaintiff's RFC, the undersigned agrees it is not clear that the hypothetical question accurately describes all of plaintiff's mental functional limitations. Plaintiff goes on to argue that the ALJ also erred in failing to include in the hypothetical question "the following limitations . . . : Depression, anxiety, panic attacks, and the effect of [her] obesity on her other impairments." (ECF #17, p. 19). But these are merely impairments, which, as noted above, alone are insufficient to demonstrate the existence of significant – let alone disabling – limitations, nor has plaintiff pointed to any specific evidence in the record, again other than that discussed above, establishing the presence of such limitations. Accordingly, the ALJ did not err in excluding them.

Plaintiff further argues, however, that the ALJ erred in failing to inquire of the vocational expert as to whether his testimony conflicted with the information concerning the jobs identified contained in the Dictionary of Occupational Titles ("DOC"). The ALJ has the affirmative duty

to ask the vocational expert about possible conflicts between her testimony and information in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also is required to explain in his or her decision how the discrepancy or conflict was resolved. See SSR 00-4p, 2000 WL 189704 *4.

Plaintiff argues the ALJ failed to uphold his affirmative duty in this regard in this case, as he did not actually make the requisite inquiry at the hearing (see Tr. 55-58), though he stated that the vocational expert's testimony was "consistent with the information contained in the" DOT (Tr. 30). Defendant argues that because plaintiff does not assert or show that an actual conflict existed, any error committed by the ALJ in this case was harmless. But the ALJ's duty here is, as noted above, an affirmative one the ALJ is required to perform. In addition, because the ALJ failed to make the requisite inquiry here, and did not otherwise explain the basis for his statement that no inconsistency existed, and because the Court itself – and for that matter the ALJ – is not a vocational expert, it is impossible to know if such a conflict exists. As such, the ALJ did err in failing to make the appropriate inquiry.

V. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record

that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, the lay witness evidence in the record, plaintiff's residual functional capacity, and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant to conduct further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 11, 2011**, as noted in the caption.

DATED this 25th day of January, 2011.

Karen L. Strombom
United States Magistrate Judge